**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

MASIMO CORPORATION, :
Plaintiff, :
v. : Civil Action No. 11-742-LPS-MPT
PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and PHILIPS MEDIZIN SYSTEME BÖBLINGEN GMBH, :
Defendants. :

**MEMORANDUM ORDER**

## I. INTRODUCTION

Presently before the court is a motion to consolidate and stay filed by defendants, Philips Electronics North American Corporation and Philips Medizin Systeme Böblingen GmbH (collectively "Philips"), in a patent infringement suit brought by plaintiff, Masimo Corporation ("Masimo"). For the reasons discussed herein, Philips' motion will be granted in part and denied in part.

## II. BACKGROUND

Masimo and Philips manufacture competing products in pulse oximetry. Pulse oximetry is a non-invasive procedure for measuring the level of oxygen saturation in a patient's arterial blood. Pulse oximetry systems are standard equipment in many clinical settings, either as stand-alone devices, or, more commonly, as components of integrated multi-parameter patient monitors which track pulse, temperature, and other physiological vital signs. They are composed of a sensor; a monitor, also sometimes

referred to as a board, socket, or pulse oximeter, which contains the electronics that process the signal and produce a saturation reading; and may have a cable which connects the sensor and monitor.

Modern pulse oximeters permit users to monitor patients continuously and in real time. Where previous technology could not provide accurate data in the presence of motion induced "noise," the products manufactured by both Masimo and Philips remove, filter, or circumvent the "noise" to generate more accurate data points.

### A. *Masimo I*[1]

Masimo brought suit against Philips, asserting infringement of fourteen patents.[2] Philips answered asserting ten patents[3] and seven antitrust counterclaims.[4] After full briefing, the court bifurcated and stayed Philips' antitrust counterclaims.[5]

For litigation and trial management purposes, the parties were ordered to reduce the number of patents involved to a more manageable level. The parties were initially able to reduce the original twenty-four patents to fourteen. Thereafter, the court reduced the number of patents to seven. Masimo had to select four of its remaining patents, while Philips had to select three of its remaining patents.[6] Masimo chose U.S. Patent No. 6,263,222 (the "'222 patent"), U.S. Patent No. 5,632,272 (the "'272 patent"), U.S. Patent No. 7,215,984 (the "'984 patent"), and U.S. Patent No. 6,699,194 (the "'194

---

[1] "*Masimo I*" refers to C.A. No. 09-080 LPS-MPT. Any citation to this docket will consist of the docket information followed by "(*Masimo I*)".
[2] D.I. 1; D.I. 12 at 2-4, ¶¶ 7-20 (*Masimo I*).
[3] D.I. 15 at 53-62 (*Masimo I*).
[4] *Id.* at 29-37.
[5] D.I. 67 at 10; D.I. 86 at 12; D.I. 118 at 3 (*Masimo I*).
[6] D.I. 148 at 3 (*Masimo I*).

patent”).[7] Philips selected U.S. Patent No. 5,448,991 (the “‘991 patent”), U.S. Patent No. 6,122,535 (the “‘535 patent”), and U.S. Patent No. 6,725,074 (the “‘074 patent”).[8]

On December 1, 2010, a *Markman* hearing was conducted, and a Report and Recommendation on claim construction was issued on February 18, 2011.[9] Both parties filed objections.[10] On January 17, 2012, Judge Leonard P. Stark adopted the Report and Recommendation, with the exception of the term “a signal processor,” as used in claim 17 of the ‘222 patent.[11]

### B. *Masimo II*[12]

Subsequently, Masimo filed a second action against Philips, alleging infringement of two patents, U.S. Patent No. 7,530,955 (the “‘955 patent”) and U.S. Patent No. 8,019,400 (the “‘400 patent”).[13] Philips answered, again raising seven antitrust counterclaims.[14] On November 22, 2011, Philips filed a motion to consolidate and stay *Masimo I* and *Masimo II*.[15] Masimo opposes this motion.[16]

## III. DISCUSSION

### A. Consolidation of the *Masimo I* “Limbo” Patents[17] and the *Masimo II*

---

[7] D.I. 164 at 2 (*Masimo I*).
[8] D.I. 163 at 3 (*Masimo I*).
[9] D.I. 210 (*Masimo I*).
[10] D.I. 218; D.I. 219 (*Masimo I*).
[11] D.I. 319 (*Masimo I*).
[12] “*Masimo II*” refers to C.A. No. 11-742 LPS-MPT. Any citation to this docket will consist of the docket information followed by “(*Masimo II*)”.
[13] D.I. 1; D.I. 7 at 2-4 (*Masimo II*).
[14] D.I. 11 at 18-25 (*Masimo II*). These counterclaims were similar to those stayed in *Masimo I*.
[15] D.I. 15; D.I. 16 (*Masimo II*).
[16] D.I. 23 (*Masimo II*).
[17] D.I. 148 (*Masimo I*). As noted, seven out of the fourteen remaining patents were selected for trial. The remaining seven unselected patents are referred to as the

**Patents**[18]

Under FED. R. CIV. P. 42(a), "courts have the authority to consolidate actions involving a common question of law or fact."[19] The court has broad discretionary power in deciding whether to consolidate cases and typically "balance considerations of efficiency, expenses, and fairness."[20] Although there may be common issues between actions, a prerequisite to consolidation, this does not mandate a joint trial.[21]

**1. Similarity of Patents**

Philips argues "*Masimo II* involves the same family of patents, the same technology and the same accused products as *Masimo I*."[22] Similar technologies at issue and the same parties in each case may "lead the court to conclude that judicial resources likely will be conserved by consolidating [the] cases."[23] In determining whether the technologies at issue are similar, the court can look to which class, or subclass, the United States Patent and Trademark Office ("PTO") has classified each of the patents.[24]

The four Masimo limbo patents[25] and their United States Patent Classification Class/Subclass include: U.S. Patent No. 7,509,154 (the "'154 patent") (600/323;

---

"limbo" patents.

[18] March 28, 2012 Teleconference Transcript ("Tr") at 74:20-21 (*Masimo I*).

[19] *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 06-514 GMS, 2007 WL 2892707, at *3 (D. Del. Sept. 30, 2007).

[20] *Id.*

[21] *Cedars-Sinai Med. Ctr. v. Revlon, Inc.*, 111 F.R.D. 24, 32 (D. Del. 1986).

[22] D.I 16 at 5 (*Masimo I*).

[23] *Abbott*, 2007 WL 2892707, at *4.

[24] *Id.* at *4 n.5.

[25] D.I. 140 at 2; D.I. 162 at 3 (*Masimo I*).

600/324; 600/336),[26] U.S. Patent No. 6,157,850 (the "'850 patent") (600/323; 600/336; 600/509; 600/529),[27] U.S. Patent No. 7,530,949 (the "'949 patent") (600/300; 600/323),[28] and U.S. Patent No. 6,002,952 (the "'952 patent") (600/310; 600/481; 600/502)[29]. The three Philips limbo patents[30] and their United States Patent Classification Class/Subclass include: U.S. Patent No. 5,820,550 (the "'550 patent") (600/323; 600/336; 356/41),[31] U.S. Patent No. 5,337,745 (the "'745 patent") (128/633; 128/664; 128/665; 356/39),[32] and U.S. Patent No. 5,170,786 (the "'786 patent") (128/633; 128/665)[33]. The two *Masimo II* patents[34] and their United States Classification Class/Subclass include the '955 patent (600/502; 600/324)[35] and the '400 patent (600/323; 600/336)[36].

Similarly to the finding in *Abbott,*[37] the *Masimo II* patents and all but two of the *Masimo I* limbo patents are in Class 600. Although the other two *Masimo I* limbo patents are listed in Class 128, "Class 600 is an integral part of this Class."[38] Further, all of the Class 600 patents fall within Subclasses 502, 323, 324, or 336. Thus, "[b]ased

---

26 D.I. 140, Ex. 7 (*Masimo I*).
27 *Id.*, Ex. 2.
28 *Id.*, Ex. 8.
29 *Id.*, Ex. 4.
30 D.I. 140 at 2; D.I. 162 at 3 (*Masimo I*).
31 D.I. 140, Ex. 12 (*Masimo I*).
32 *Id.*, Ex. 10.
33 *Id.*, Ex. 9.
34 D.I. 7 at 2, ¶¶ 7-8 (*Masimo II*).
35 *Id.*, Ex. 1 at 2.
36 *Id.*, Ex. 2 at 81.
37 *Abbott*, 2007 WL 2892707, at *4 n.5.
38 Class Schedule for Class 128 SURGERY, United States Patent and Trademark Office, http://www.uspto.gov/web/patents/classification/uspc128/sched128.htm (last visited Apr. 5, 2012).

on this evidence, . . . the PTO found the technologies in the . . . [p]atents related."[39]

### 2. Delay

Masimo contends the court should deny any consolidation that causes delay. Further, Masimo argues consolidation would place the *Masimo II* patents into an indefinite "limbo" status.[40] Philips counters that proceeding on the newly asserted patents at the present stage of *Masimo I* would be duplicative, wasteful, and burdensome.[41]

At the time of the briefing on Philips' motion, the parties were awaiting a decision on their objections to claim construction.[42] Those issues were resolved on January 17, 2012.[43] Thereafter, at the request of the parties, various stipulations and orders were issued extending certain deadlines in *Masimo I*.

On March 19, 2012, the parties as ordered submitted a joint status report which included a joint expert discovery and case dispositive motions schedule for the seven selected patents in *Masimo I*; their respective proposed schedules for the limbo patents in *Masimo I* and the two patents in *Masimo II*; and their estimates for the number of claim terms to be construed for the limbo patents in *Masimo I* and the patents in *Masimo II*.[44] Those proposals are presently under consideration by the court.

### 3. Injunctive Relief

---

[39] *Abbott*, 2007 WL 2892707, at *4 n.5.
[40] D.I. 23 at 9 (*Masimo II*).
[41] D.I. 25 at 7 (*Masimo II*).
[42] *Id.* at 5-6.
[43] D.I. 319 (*Masimo I*).
[44] D.I. 327 (*Masimo I*).

Masimo contends it has been prejudiced by the delay to date in *Masimo I*, and any further delay may prevent injunctive relief in *Masimo II*.[45] It is not clear whether Masimo is referencing a preliminary or permanent injunction, or both.

**a. Preliminary Injunction**

A district court has discretion, under 35 U.S.C. § 283, to grant or deny a preliminary injunction in a patent infringement case. Under 35 U.S.C. § 283, a court can "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." In order to obtain a preliminary injunction, a moving party must establish: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest."[46] No one factor is dispositive, as the district court must weigh each factor.[47] The moving party must "demonstrate both a reasonable likelihood of success on the merits and irreparable harm."[48]

Although Masimo suggests prejudice by the delay to date, with future delay potentially preventing injunctive relief on the *Masimo II* patents, it never proceeded for a preliminary injunction in *Masimo I*. Further, neither party has presented sufficient

---

[45] D.I. 23 at 9-10 (*Masimo II*).

[46] *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citing *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994)).

[47] *Digene Corp. v. Ventana Med. Sys., Inc.*, 484 F. Supp. 2d 274, 279 (D. Del. 2007) (citing *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988)).

[48] *Digene*, 484 F. Supp. 2d at 279 (citing *Reebok*, 32 F.3d at 1555-57).

evidence or information that either party is likely to prevail at trial over the other,[49] nor has Masimo demonstrated irreparable harm. It argues because of expiry, injunctive relief for certain patents may be unavailable.

**b. Permanent Injunction**

For a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[50] A district court's decision to grant or deny permanent injunctive relief is an act of equitable discretion, "reviewable on appeal for abuse of discretion."[51]

Although Masimo and Philips are competitors in the market involving the technology of the limbo and *Masimo II* patents, the parties have raised cross-patent claims, with counterclaims of non-infringement and invalidity, against each other, making the probability of injunctive relief uncertain. Again, neither has presented sufficient evidence or information that either party is likely to prevail at trial over the other,[52] nor has irreparable harm been demonstrated. As noted previously, Masimo's concern is the unavailability of injunctive relief due to expiration of certain patents resulting from the passage of time.

---

[49] *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 742 F. Supp. 2d 492, 497, 500-01 (D. Del. 2010).

[50] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[51] *Id.*

[52] *Masimo*, 742 F. Supp. 2d at 497, 500-01 (*Masimo I*).

**4. Analysis**

The related technologies at issue in the *Masimo I* limbo patents and the *Masimo II* patents involve the same parties and same products, and thus strongly indicates judicial resources are likely to be conserved by consolidating the limbo and *Masimo II* patents. Although the two matters involve different patents with different claims, the issues in both cases are closely intertwined, and likely will involve the same witnesses and similar documentary evidence and exhibits.

**B. Stay of the *Masimo I* Limbo Patents and the *Masimo II* Patents**

Courts have broad discretionary power to stay proceedings, and in so determining, apply the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical advantage to the nonmovant; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set."[53] A court may also consider "(1) the length of the requested stay [and] (2) the 'hardship or inequity' that the movant would face in going forward with the litigation."[54] The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."[55]

**1. Undue Prejudice or Clear Tactical Advantage to Masimo**

Masimo argues a stay is prejudicial by causing further delay and

[53] *nCube Corp. v. Seachange Int'l. Inc.*, C.A. Nos. 01-011 JJF, 09-573 JJF, 2010 WL 2266335, at *2 (D. Del. June 4, 2010).

[54] *St. Clair Intellectual Prop. Consultants, Inc. v. Fujifilm Holdings Corp.*, C.A. No. 08-373 JJF-LPS, 2009 WL 192457, at *2 (D. Del. Jan. 27, 2009).

[55] *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

potentially eliminating injunctive relief. Masimo also contends Philips delayed addressing Masimo's patents for over a decade, leading Masimo to believe there were no patent issues. Some of Masimo's asserted patents have already expired during the pendency of *Masimo I*, while the *Masimo II* patents do not expire until 2015 and 2017. Masimo maintains Philips' proposed stay would eliminate any ability to obtain meaningful injunctive relief,[56] specifically the '955 patent of *Masimo II*.[57]

Philips counters that any delay is not its fault. It notes Masimo delayed filing any action for ten years and instead sought a business deal.[58] Although Philips and Masimo entered into an OEM agreement, Masimo's patent concerns were never resolved.[59] Importantly, Masimo acknowledged it could have sued Philips for patent infringement at any time.[60]

Further, Philips maintains Masimo could have added the '955 patent to *Masimo I*.[61] The issue date of the '955 patent was May 12, 2009.[62] Although Masimo filed an amended complaint on the same day, it did not add the '955 patent to *Masimo I*.[63] Even after the deadline to amend pleadings was extended to April 21, 2010,[64] Masimo did not add the '955 patent to the first case. Thus, according to Philips, Masimo's claim of substantial prejudice from any future delay of *Masimo II* is specious, and confirms

---

[56] D.I. 23 at 3, 11 (*Masimo II*).

[57] The '955 patent is one of the patents asserted in *Masimo II*. The other is the '400 patent.

[58] D.I. 25 at 3 (*Masimo II*).

[59] D.I. 23, Ex. 1 at 209:22, 210:1-6, 211:11-13 (*Masimo II*).

[60] D.I. 25, Ex. N at 216:12-18 (*Masimo II*).

[61] D.I. 25 at 6 (*Masimo II*).

[62] *Id.*

[63] D.I. 12 (*Masimo I*).

[64] D.I. 104 at 1 (*Masimo I*).

Masimo's intent to undo the court's narrowing efforts, after significant discovery focusing on the selected patents, including over 300 hours of deposition, has occurred in *Masimo I*.[65]

However, three of Masimo's asserted patents have expired, while the two new asserted patents do not expire until at least 2015 and 2017.[66] With the passage of time, Masimo faces the prospect of litigating expired or nearly-expired patents.[67] Further, the time frame for trial in either *Masimo I* and *II* is uncertain.[68] Philips' position likely results in a stay in the *Masimo I* limbo patents and the *Masimo II* patents for years rather than months. Further, it is uncertain whether resolution of the selected *Masimo I* patents would settle any issues relating to the *Masimo I* limbo patents and the *Masimo II* patents.

**2. Simplification of the Issues and Trial of the Case**

When the court required the parties to reduce the number of patents for trial, its focus was not just directed to limiting claim construction, but to develop a clear,

---

[65] D.I. 15 at 8 (*Masimo II*).

[66] D.I. 23 at 11 (*Masimo II*).

[67] *St. Clair*, 2009 WL 192457, at *2.

[68] D.I. 327 (*Masimo I*). The parties jointly propose a schedule with a trial date of June 21, 2013 for the *Masimo II* patents. Masimo also proposes the same schedule, including the trial date, for the *Masimo I* limbo patents. Philips proposed schedule for the *Masimo I* limbo patents is approximately nine months later than Masimo's proposed schedule. Further, in the parties' scheduling proposal for *Masimo II*, the exchange of expert reports, other expert discovery and summary judgment motions will occur over a six and a half month period after the *Markman* ruling issues from the claim construction hearing occurring on November 2, 2012. Six and a half months from that date is mid-May 2013, leaving a month for the court to decide case dispositive motions before the proposed trial date. The parties proposed schedule assumes no time for objections to claim construction or case dispositive motions, which obviously would result in further delays in the schedule. The proposed trial date is probably unrealistic.

orderly presentation of the matter to the jury and to enable the jury to absorb the technical information, analyze the facts, and apply the law to the facts dealing with infringement and the various issues related to invalidity.[69] That intent was the guide.

Philips contends "any potential settlement caused by resolution of issues in *Masimo I* will almost certainly include all patents currently in litigation between the parties, obviating the need for a second phase of this case."[70] According to Philips, "many issues in *Masimo I* will have a direct and substantial impact on the nine additional patents, narrowing discovery issues."[71] The accuracy of those comments is at best theoretical. Despite the considerable discovery that has occurred for the selected *Masimo I* patents, Philips represents significant discovery is necessary for the remaining *Masimo I* patents, as well as the *Masimo II* patents. Further, despite the interrelationship among the sixteen *Masimo I* and *II* patents, Philips estimates an additional twenty-four claim terms require construction.[72]

**3. Discovery**

Philips argues upon consolidation, the '955 and '400 patents should be stayed because moving forward "would unnecessarily force additional and duplicative discovery, depositions, and *Markman* proceedings."[73] Further, Philips suggests that new or different discovery will be needed for the remaining *Masimo I* and *Masimo II* patents. Masimo, on the other hand, maintains significant discovery already conducted

---

[69] D.I. 148 (*Masimo I*).
[70] D.I. 25 at 8 (*Masimo II*).
[71] *Id.*
[72] D.I. 327 at 8 (*Masimo I*).
[73] D.I. 16 at 8 (*Masimo II*).

in *Masimo I* will be applicable to *Masimo II*,[74] so any additional discovery would be "quite limited."[75] As evidenced by the section above, while certain discovery already completed in *Masimo I* will be relevant to both cases, the additional discovery necessary for the remaining *Masimo I* patents and the *Masimo II* patents is disputed.

**4. Trial Date**

When a trial date has not been set, a stay may be entered before any party incurs substantial litigation-related expenses.[76] No trial date has been set in either *Masimo I*, for any of the patents, or in *Masimo II.*

**5. Length of the Requested Stay**

A court has the power to "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."[77] Masimo argues Philips' proposal operates as an indefinite stay.[78] Philips contends a stay should continue until the *Masimo I* selected patents are litigated.[79] While the parties have submitted a proposed schedule for this litigation moving forward, the actual the length of the stay is unknown, but clearly could last for years considering post trial briefing and appeal. As noted previously, some of Masimo's limbo patents have expired, and others, selected or not, are expected to expire in the near future. Even the *Masimo II* patents have a life expectancy of approximately five years.

---

[74] D.I. 23 at 14 (*Masimo II*).

[75] *Id.*

[76] *Alloc, Inc. v. Unilin Decor N.V.*, C.A. No. 03-253 GMS, 2003 WL 21640372, at *3 (D. Del. July 11, 2003).

[77] *Bechtel Corp. v. Laborer's Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976).

[78] D.I. 23 at 15 (*Masimo II*).

[79] D.I. 16 at 7-9 (*Masimo II*).

Resuming litigation after a protracted stay carries distinct problems associated with the passage of time, such as stale evidence, faded witnesses' memories, and lost documents and information.[80] As Philips has emphasized, the discovery in *Masimo I* focused on the selected patents, with substantial discovery required for the remaining *Masimo I* patents, such as addressing the different claims of the unselected patents, depositions of the inventors related to those claims and different patents, preparation of experts on technical and damages issues, and investigating noninfringing alternatives and other prior art.[81]

**6. Hardship or Inequity Philips Would Face In Going Forward With the Litigation**

Philips contends that "[a]llowing Masimo to increase and/or reselect patents for trial will create hardship for Philips."[82] Further, Philips argues moving forward with the '955 and '400 patents "would unnecessarily force additional and duplicative discovery, depositions, and *Markman* proceedings."[83] Nevertheless, a showing of hardship or inequity in proceeding with the litigation is not an absolute requirement for a stay, but "is 'generally' needed to show that the balance of equities favors a stay."[84]

The court will not allow Masimo to reselect patents in the *Masimo I* proceedings, and recently denied Masimo's attempt to add one of the limbo patents, the '850 patent,

---

[80] *Cooper Notification, Inc. v. Twitter, Inc.*, C.A. No. 09-865 LPS, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010).

[81] Tr. at 68:4-69:5.

[82] D.I. 25 at 10 (*Masimo II*).

[83] D.I. 16 at 8 (*Masimo II*).

[84] *Cooper*, 2010 WL 5149351, at *2.

to the selected patents in *Masimo I*.[85] Additionally, as mentioned above, the impact of the *Masimo I* litigation on the *Masimo I* limbo patents and the *Masimo II* patents is uncertain.

**7. Analysis**

Having carefully reviewed all of the foregoing factors, the court concludes the competing interests do not favor a stay.

## IV. CONCLUSION

Therefore,

IT IS ORDERED that consistent with the reasoning herein, Philips' motion (D.I. 15) to consolidate is GRANTED and its motion to stay (D.I. 15) is DENIED.

Date: April 16, 2012

/s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE

[85] Tr. at 72:4-11. During the March 28, 2011 discovery teleconference, Masimo sought to add the '850 patent to the original patents selected in *Masimo I*. When the parties were ordered to chose their initial patents (four for Masimo, three for Philips), the court never directed how that selection should occur. The selection process was left to the discretion of the parties. At that time, Masimo did not suggest, object, or argue its number was insufficient, or the court's approach was inappropriate. Masimo's request to add the '850 patent came after the completion of claim construction. For the reasons noted during the discovery teleconference, Masimo's request to add the '850 patent was denied. The same logic applies to incorporating for trial the '955 and '400 patents of *Masimo II* with the selected patents of *Masimo I*.